IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JACKLEEN HERMINA             *
                            *
v.                          *    Civil Action No. WMN-11-1523
                            *
SAFEWAY, INC. et al.        *
                            *
                            *
   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

Before the Court is Defendant Safeway Inc.'s amended motion to dismiss or in the alternative for summary judgment. ECF No. 25. The motion is fully briefed. Upon a review of the papers and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and the motion will be granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2009, Plaintiff Jackleen Hermina was employed by Defendant Safeway, Inc. (Safeway) as a Pharmacy Manager in Safeway's Pasadena, Maryland store. In addition to a base salary of $112,840, Plaintiff was given a $15,000 signing bonus. Safeway maintains that Plaintiff's receipt of the bonus was conditional to Plaintiff's promise that she would repay the bonus, in full, if her employment ended, with or without cause and at the initiation of either Plaintiff or Safeway, before Plaintiff completed three full years of employment. Plaintiff

was later moved to a store closer to her home in Columbia, Maryland.

On January 26, 2010, while working in the Columbia store, Plaintiff accepted at the Pharmacy register two counterfeit American Express Traveler's Cheques with a combined value of over $800.  Asserting that, in accepting the checks, Plaintiff violated company policy by failing to verify the documents and by failing to ask for identification from the customer, Safeway placed Plaintiff on suspension without pay on February 4, 2010. After an investigation, Safeway terminated Plaintiff's employment on February 18, 2010, effective March 3, 2010.

Immediately following Plaintiff's termination, on March 9, 2010, Safeway sent Plaintiff a letter requesting repayment of the signing bonus.  After Plaintiff failed to return the funds despite several additional requests, Safeway turned the matter over to a collection agency.  After additional unsuccessful attempts to recover the signing bonus, Safeway filed, on or about March 29, 2011, a complaint in the Maryland District Court for Howard County seeking $8,685.50 plus fees.  Safeway v. Hermina, Civ. No. 1001-0001738-2011.

Shortly after Plaintiff's termination, Safeway also issued two checks payable to Plaintiff: one for accrued but unused vacation time in the amount of $2,715.46, and one for a pro-rated bonus that Plaintiff had earned in the amount of $745.84.

While these checks were issued on March 11, 2010, they were not immediately sent to Plaintiff.  Safeway initially left them at the Columbia store for Plaintiff to pick up, despite the fact that Plaintiff was apparently barred from entering the store. In fact, it would appear that Plaintiff was never told that the checks had been left for her.  When the checks remained unclaimed for an extended time, they were returned to the company's payroll center in Arizona.  The checks were then mailed to Plaintiff's home address but Plaintiff states that when she attempted to deposit them into her account, they were returned as "stale dated."  The checks were then returned to Safeway's "Abandoned Property" center.

In the meantime, on or about September 29, 2010, Plaintiff filed a claim with the Maryland Department of Labor, Licensing and Regulation (DLLR) asserting that Safeway owed her unpaid hourly wages in the amount of $15,407.00, other wages in the amount of $1,302.00, as well as unpaid vacation and personal leave.  Maryland DLLR Claim No. 11-10-038.  In response to the claim, Tim Matthews, a Human Resources Manager for Safeway, submitted a letter to DLLR on November 2, 2010, explaining Safeway's position regarding Plaintiff's termination and her wage claim.  Regarding her termination, Matthews stated that Ms. Hermina was placed on suspension without pay on February 4, 2010, pending a Loss Prevention investigation

and that, upon completion of the investigation, a decision was made to terminate her employment effective March 3, 2010.  Matthew's Aff., Attach. E.

Regarding her wage claims, Matthews explained Safeway's efforts, discussed supra, to send Plaintiff the two checks. Pursuant to Safeway's policy whereby it will not issue a replacement check until such time as the payee signs an indemnity agreement, Safeway provided to DLLR copies of indemnity agreements for the two checks.  Matthews reports that as of March 2011, Plaintiff had not submitted the signed indemnity agreements.

In addition to the DLLR claim, on or about May 11, 2011, Plaintiff also filed in the Circuit Court for Howard County a suit that she designates as a "counter-suit" to the pending state District Court suit.  In the Circuit Court complaint against Safeway, Plaintiff asserted claims of Breach of Contract, Quantum Meruit, Unjust Enrichment, Defamation, Unpaid Wages, and Debt Collection Violations.  Plaintiff then filed a motion in the state District Court to transfer Safeway's collection action to the Circuit Court for consolidation with her counter-suit.  That motion was denied.  On motion of the parties, however, the District Court action has been stayed.

Safeway removed the Circuit Court action to this Court and it is now the above captioned action.  Safeway then filed a

4

motion to dismiss, or in the alternative, for summary judgment. In response to the motion to dismiss, Plaintiff filed an Amended Complaint adding Matthews as a Defendant in the defamation claim, inserting a wrongful discharge claim, and significantly increasing the amount of damages sought.  Defendant Safeway[1] then filed the pending amended motion to dismiss or for summary judgment.

In preparing his affidavit in support of the instant motion, Matthews contacted Safeway's Employee Service Center and learned that an indemnity agreement for the original check in the amount of $745.84 had been received and a new check for that amount was sent to Plaintiff's attorney.  As of July 8, 2011, however, that check had not been cashed.  While there is some confusion in the record as to whether a signed indemnity agreement was ever received related to the second check, Matthews avers that he bypassed Safeway's normal procedures and issue a second check to Plaintiff for $2,715.46.  That check was forwarded to Plaintiff through her attorneys and that check has been cashed.

## II. LEGAL STANDARD

---

[1] While Matthews was included as a defendant in the Amended Complaint, he was apparently never served.  Thus, the motion is filed only on behalf of Safeway.

The standard for a Rule 12(b)(6) motion to dismiss is well known.  To survive such a motion, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  <u>Ibarra v. United States</u>, 120 F.3d 472, 474 (4th Cir. 1997).

As to some of the claims, the parties have submitted and the Court has considered matters outside of the pleadings.  As to these claims, the motion is converted to one for summary judgment.  Fed. R. Civ. P. 12(d).  Summary judgment is proper if the evidence before the court establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying

the portions of the opposing party's case which it believes
demonstrate the absence of a genuine issue of material fact.
Id. at 323.

If the movant demonstrates that there is no genuine issue
of material fact and that the movant is entitled to summary
judgment as a matter of law, the non-moving party must, in order
to withstand the motion for summary judgment, produce sufficient
evidence which demonstrates that a triable issue of fact exists
for trial.  Celotex, 477 U.S. at 324.  Unsupported speculation
is insufficient to defeat a motion for summary judgment.  Felty
v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987)
(citing Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12
(4th Cir. 1986)).  Furthermore, the mere existence of some
factual dispute is insufficient to defeat a motion for summary
judgment; there must be a genuine issue of material fact.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).
Thus, only disputes over those facts that might affect the
outcome of the case under the governing law are considered to be
"material."  Id.  Finally, the non-moving party is entitled to
have "all reasonable inferences . . . drawn in its respective
favor."  Felty, 818 F.2d at 1129.

**III. DISCUSSION**

**A. Breach of Contract**

There are two primary aspects to Plaintiff's breach of contract claim.[2]  First, she alleges that Defendant promised her employment for a period of three years and that Safeway breached that agreement when it terminated her employment without any just, good faith reason or cause.  Second, Plaintiff asserts that Defendant contractually bound itself to guidelines providing "progressive discipline" but then failed to abide by those guidelines.

As to the alleged three year term to her employment contract, Plaintiff acknowledges that Maryland is an at will state and that, as a general rule, employment can be terminated at the pleasure of either party, without cause.  Pl.'s Opp'n at 10 (citing Vincent v. Palmer, 19 A.2d 183 (Md. 1941)); see also, Staggs v. Blue Cross, 486 A.2d 798, 801 (Md. Ct. Spec. App. 1985).  Plaintiff argues, however, that the hiring bonus conditioned upon her remaining employed for three years created ambiguity as to whether her particular employment was at will or was guaranteed for three years.  If ambiguous, she argues, that dispute should be reserved for a jury to resolve.  She also avers that Brian Drummond, the Safeway employee who interviewed

---

[2]  Plaintiff also includes in this count assertions that Defendant terminated her employment because she voiced concerns about unsafe practices and that Defendant failed to pay her overtime to which she was entitled.  These assertions will be discussed, infra, in connection with other causes of action.

her for the Pharmacy Manager position, told her that she "had to give Safeway 'a three-year commitment.'"  Pl.'s Aff. ¶ 4.

The Court finds that there was no contract for three years of employment and that there was no ambiguity as to that matter. The letter Drummond sent to Plaintiff offering her the position and explaining the signing bonus clearly stated, "[n]either this letter nor the Company's payment of any bonus amounts to you constitutes a guarantee of, or contract for employment for any specific term." Drummond Aff., Attach. A.  Plaintiff also signed and dated that letter under the affirmation, "I understand Safeway's Policy that employment is at will and for no specific term and that the employment relationship may be terminated by either party at any time and for any reason." Id. The employment application signed by Plaintiff contained a similar acknowledgement which Plaintiff checked and then signed below: "At-will employment: . . . I understand that if I become employed by the Company, my employment is for no specific term. . . . I further understand that no Company representative has any authority to enter into any agreement with me different or contrary to the foregoing." Drummond Aff., Attach. C. Furthermore, when Plaintiff received the signing bonus, she signed a Promissory Note that stated, immediately above her signature, that "[t]his note is not intended, nor shall it be construed, as an express or implied contract of employment for

three years, or any other definite period."  Drummond Aff., Attach. B.

In light of these repeated and clear representations, there is no ambiguity that would take Plaintiff's employment outside of Maryland's at will employment rule.

In support of her claim that Defendant breached a promise to provide "progressive discipline," Plaintiff avers in her Complaint and repeats in an affidavit that Safeway assured that "employees would be afforded a progressive discipline whereby the first step would be counseling, the second would be suspension, followed by termination."  Pl.'s Aff. ¶ 12; see also Am. Compl. ¶ 14.  In her affidavit, Plaintiff asserts that this provision was in an online Handbook to which she no longer has access.  Pl.'s Aff. ¶ 12.  Defendant responds by providing a copy of the Safeway Employee Handbook.  That Handbook does not contain any reference to or guarantee of progressive discipline. It does, however, contain a provision that "[a]pproval of all checks must be made by the Store Manager or someone specifically designated by him.  You are never to assume this authority for yourself."  Matthews Aff., Attach. L at 25 (emphasis in original).[3]

---

[3] The Court is somewhat surprised that the Employee Handbook submitted by Safeway indicates on its cover that it was last revised in 1983.  Id. at 1.  Nevertheless, Matthews swore in his affidavit that the attached Handbook was a true and correct copy

The Court finds that Defendant Safeway is entitled to summary judgment as to Plaintiff's contract claim.

### B. Quantum Meruit and Unjust Enrichment

To bring a claim of unjust enrichment, a plaintiff must establish: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.  Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc., 190 F. Supp. 2d 785, 792-93.  The elements of a quantum meruit claim are similar.  Id. at 793.

Plaintiff has attempted to bring a variety of payments allegedly owed to her within the ambit of her unjust enrichment and quantum meruit claims.  In her Amended Complaint, Plaintiff identifies overtime pay to which she alleges she was entitled as the basis for her quantum meruit claim.  In support of her

---

of the Handbook that Safeway employees are required to read and study thoroughly.  Matthews' Supp. Aff. ¶ 12.  While Plaintiff makes reference to some online version of a handbook, she does not produce it nor does she oppose the motion for summary judgment on the ground that more time was needed for discovery. See Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (noting that "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'") (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)).

unjust enrichment claim, Plaintiff references earned leave and overtime for which she has yet to be paid.  In both counts Plaintiff prays for $100,000 plus interest, attorney's fees and costs of suit.

In her opposition to that portion of Defendant's motion relating to these claims, Plaintiff asserts she is "entitled to two checks: one for $2,715.46 and another for $745.84."  ECF No. 26 at 12-13.  Without explicitly acknowledging that she received and cashed the $2,715.46 check, she implicitly acknowledges that fact by asserting that she "is entitled to interest earned on the first stated amount and the entire amount of the second check of $745.84."  Id. at 13.  Regardless, it appears undisputed that Plaintiff has received the $2,715.46 as Defendant has submitted a copy of the cancelled check for that amount.  ECF No. 25-11.

Plaintiff also asserts in her opposition that she is owed "the amount of $1,529.60 in earned wages, which Safeway wrongfully withheld."  Id.  As support for that assertion, Plaintiff submitted a printout of her credit union statement for the period February 25, 2010, to March 18, 2010, showing an "External Deposit" of $1,529.60 on March 4, 2010, and an "External Withdrawal" of that same amount on that same date. There is a handwritten notation on the printout next to the withdrawal which reads: "Safeway, Inc."  Pl.'s Opp'n, Attach E.

12

In her Affidavit, Plaintiff asserts that Safeway withdrew a wage check deposit, and references this credit union statement. Pl.'s Aff.  ¶ 29.

With the possible exception of the $745.84 allegedly still owed for Plaintiff's prorated bonus, the Court finds that Plaintiff has failed to support her unjust enrichment or quantum meruit claims.  It is undisputed that Plaintiff has received the $2,715.46 for unused vacation time and Plaintiff offers no support for her interest claim related to that payment.  As to Plaintiff's entitlement to overtime wages, Defendant notes that Maryland Wage and Hour Law exempts employers from any duty to pay overtime wages to individuals employed in professional capacities.  An employee is employed in a professional capacity if she is compensated on a salary basis at a rate of not less than $455 per week, and her primary duty is the performance of work that requires "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction."  Md. Code Regs. 09.12.41.17 (incorporating the definition of "professional capacity" from 29 C.F.R. § 541.300 et seq.).  Plaintiff's position as a pharmacist who was paid more than $2,000 per week certainly falls within that exempt category and Plaintiff makes no argument to the contrary.

Plaintiff's claim for the $1,529.60 that was apparently deposited and then withdrawn from her account on March 3, 2010, is somewhat problematic.  Defendant notes that no claim related to that amount was included in the Amended Complaint.  Given that Plaintiff asserted in her Wage Claim before DLLR that she was entitled to wages for the period of her suspension, i.e., February 4, 2010 to March 3, 2010, see Matthew's Aff., Attach. A, and that she states in her opposition that this sum is for "wages earned," Pl.'s Opp'n at 13, the Court must assume that Plaintiff claims this withdrawn March 3, 2010, deposit was for wages she believes she earned while on suspension.  Safeway informed Plaintiff, however, when she was placed on suspension that the suspension was without pay and Plaintiff has offered no support to the contrary.  In the absence of any further explanation or evidence regarding the withdrawal from the credit union account, the Court finds that Plaintiff has failed to support any unjust enrichment or quantum meruit claims related to the $1,529.60.

As stated above, there remains a question as to the $745.84 prorated bonus.  While it would appear that Plaintiff has the check but simply has not cashed it, the record concerning Defendant's efforts to get this check to Plaintiff is muddled. The Court also notes, however, that Plaintiff makes no reference to bonus payments in either the quantum meruit or unjust

enrichment counts.  Accordingly, the Court will dismiss these counts and address Plaintiff's entitlement to the bonus payment in the context of her Wage Payment and Collection Act claim, infra.

### C. Defamation

To establish a cause of action for defamation under Maryland law, a plaintiff must show: (1) the defendant made a defamatory statement regarding the plaintiff to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff suffered harm.  Mazer v. Safeway, Inc., 398 F. Supp. 2d 412, 428 (D. Md. 2005).  A "defamatory statement" is one that "tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person."  Gohart v. Darvish, 767 A.2d 321, 327 (Md. 2001).  Legal "fault" in this context refers to either negligence or actual malice.  See Shapiro v. Massengill, 661 A.2d 202, 217 (Md. Ct. Spec. App. 1995).

Even where these elements are established, any statement made in a judicial or qualified quasi-judicial proceeding is protected by an absolute privilege absent a showing of falsity and actual malice.  Furthermore, in the context of the employer-employee relationship, statements made to prospective employers or upon request by industry regulatory authorities fall under a

qualified privilege if the employer was acting in good faith.
Md. Code Ann., Cts. & Jud. Proc. § 5-423(a).  In that context,
there is a legal presumption that the employer is acting in good
faith absent a showing by "clear and convincing evidence" that
the employer acted with actual malice or intentionally or
recklessly disclosed false information about the employee.  Id.
§ 5-423(b).

The statement that Plaintiff alleges was defamatory was the
statement Matthews made in the response he submitted to the DLLR
on behalf of Defendant which read, in its entirety:

> On February 4, 2010 Ms. Hermina was placed on
> suspension without pay by her Regional Pharmacy
> Manager pending a Loss Prevention investigation.  Upon
> completion of the investigation a decision was made to
> terminate Ms. Hermina's employment effective 3-3-10.

Matthew's Aff., Attach. E (emphasis in original).   Plaintiff
asserts that the mention of a "Loss Prevention investigation"
suggests that Plaintiff was personally engaged in theft.  Am.
Compl. ¶ 35.  Plaintiff further alleges that Matthews knew the
statement was false when he made it, and that he acted with
actual malice or at least reckless disregard for the truth.  Id.
¶ 36.

It is doubtful that Plaintiff has supported a defamation
claim, even without consideration of privilege issues.
Matthews' statement is factually correct.  There was a loss
prevention investigation and Plaintiff was suspended during its

16

pendency.  Matthews nowhere states that Plaintiff was the object
of that investigation.

Regardless, the Court concludes that Matthews' statement is
protected by privilege.  Plaintiff filed a claim with the DLLR
for recovery of unpaid wages and the DLLR instituted a formal
investigation of the matter.  The DLLR required Defendant to
submit, in writing, the specific legal or factual basis as to
why it disputed Plaintiff's wage claim and Matthews submitted a
factually accurate explanation of Defendant's position.

Plaintiff does not actually contest that Matthews'
statement was subject to privilege but instead contends that the
privilege was lost by a showing of falsity and malice.  Pl.'s
Opp'n at 14.  In making that argument, Plaintiff relies on
Shapiro, supra., characterizing the facts of Shapiro as:
"plaintiff's employer sent a letter to a state agency
suggesting, inter alia, that plaintiff had an 'involvement' in a
criminal investigation."  Id. at 13.  The actual facts of
Shapiro, however, are readily distinguishable from the facts in
the instant action.

In Shapiro, an attorney was fired from the law firm that
had recently employed him after the firm learned that the
federal government was investigating some billing discrepancies
at the attorney's former place of employment.  When the attorney
filed for unemployment benefits with the Maryland Department of

17

Employment and Economic Development (DEED), the employer sent a letter to DEED opposing the award of those benefits.  In that letter, the employer stated that the plaintiff "admitted . . . that he could be indicted," notwithstanding the fact that the plaintiff maintained that he had actually "steadfastly denied that he could be indicted."  661 A.2d at 216, 207.  The employer also stated in the letter to DEED that the plaintiff had failed to disclose information that "went to the very core, ethically and morally," of the proposed legal practice.  Id. at 216.  The employer concluded the letter by opining that he "could no longer trust [the plaintiff's] ethics [or] his judgment."  Id.

Under those facts, the Maryland Court of Special Appeals held, without much discussion, that the question of whether the employer abused any qualified privilege that his words enjoyed should have been submitted to a jury.  Here, however, there is no inkling of such abuse.  It should be noted that the claim Plaintiff submitted to the DLLR and to which Matthews was responding involved Plaintiff's entitlement to wages for the period February 4, 2010, to March 3, 2010.  Matthew's response directly addressed that issue and focused on that issue, i.e., that Plaintiff had "been placed on suspension without pay" during the pendency of a loss prevention investigation that took place during that period.

The Court concludes that Plaintiff has failed to state a cause of action for defamation.

### D. Debt Collection Act

In Count IV of the Amended Complaint, Plaintiff references Section 4-202 of the Commercial Law article.  That section sets out the duties of collecting banks when presenting items or sending items for presentment and could have no possible relevance to this case.  Remarkably, despite Defendant's pointing out that Plaintiff had cited the wrong statute, Plaintiff repeats the reference to Section 4-202 in her Opposition.  Pl.'s Opp'n at 17.  Because Plaintiff's allegations in Count IV relate to the collection of a debt, the Court must assume she intended to reference § 14-202, which is part of the Maryland Consumer Debt Collection Act.

Section 14-202 regulates the activities of "collectors" of consumer debt.  A "collector" is defined as a "person collecting or attempting to collect an alleged debt arising out of a consumer transaction."  Id. § 14-201(b).  A "consumer transaction" is defined as "any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes."  Id. § 14-201(c).  While Defendant noted in its motion the inapplicability of Maryland's consumer debt statute to an action of an employer to recover a signing bonus from a former

19

employee, Plaintiff made no response in her opposition beyond opining that Defendant's argument is "premature" and that "the Court should permit discovery on the issue of whether Safeway is liable for violation of the Maryland act."  Pl.'s Opp'n at 18. Plaintiff does not begin to explain, however, how discovery could transform an employment agreement into a consumer transaction.  Defendant's motion will be granted as to this count.

## E. Wrongful Discharge

As stated above, the employment relationship in Maryland is generally an at will relationship and can be terminated by either party for any or no reason.  Courts have recognized a limited exception to that rule permitting a cause of action for wrongful discharge where the termination of the plaintiff's employment contravenes some "clear mandate of public policy." Adler v. American Standard Corp., 432 A.2d 464, 471 (Md. 1981). Courts have also cautioned, however, that this is a narrow exception to the employment-at-will doctrine and that there is a strong presumption against the judicial creation or recognition of public policy.  Id. at 472.  In order for a mandate of public policy to be well-established enough to form the basis of a wrongful discharge action, there "'must be a preexisting, unambiguous, and particularized pronouncement by constitution, enactment, or prior judicial decision, directing, prohibiting,

or protecting the conduct in question so as to make the public policy on the relevant topic not a matter of conjecture or interpretation.'" <u>Szaller v. Am. Nat'l Red Cross</u>, 293 F.3d 148, 151 (4th Cir. 2002) (quoting <u>Porterfield v. Mascari II, Inc.</u>, 788 A.2d 242, 245 (Md. 2002)).

In her Amended Complaint, Plaintiff asserts that her termination was "in contravention of the clear mandate of public policy that individuals and employees oppose unsafe conditions without fear of retribution for engaging in the same." Am. Compl. ¶ 48. In opposing Defendant's motion for summary judgment, Plaintiff references a single email that she sent to her supervisor, Jeremy Cundiff, inquiring about several maintenance related issues at her pharmacy, including: purchasing a vacuum cleaner, having the pharmacy floors stripped, and the need for additional storage space. The only reference in that email that arguably relates to "unsafe conditions," is the following inquiry: "Hi Jeremy, I have several hazardous bottles with used syringes which have no cover and are over filled with no return boxes. I would like to know how to go about returning those." Pl.'s Opp'n, Attach. D. Cundiff responded, "[o]rder another sharps container or two and use that one to send them back." <u>Id.</u> That appears to be the end of any discussion or reference to the issue.

This single email does not implicate any clear mandate of
public policy.  Even were the Court to read into her question
that she was attempting to "blow the whistle" on some serious
safety concern, Maryland courts have consistently rejected
wrongful discharge claims of "whistleblowers" who only raise
their concerns internally.  See Symeonidid v. Paxton Capital
Group, Inc., 220 F. Supp. 2d 478, 485 (D. Md. 2002); Wholey v.
Sears Roebuck, 803 A.2d 482, 494-95 (Md. 2001).  Here,
Plaintiff's only claim is that she raised this single issue on a
single occasion, and only to her supervisor.  As such,
Defendant's motion will be granted as to Plaintiff's wrongful
discharge claim.

### F. Maryland's Wage Payment and Collection Law

Under Maryland's Wage Payment and Collection Law (MWPC), it
is the general rule that

> each employer shall pay an employee or the
> authorized representative of an employee all
> wages due for work that the employee performed
> before the termination of employment, on or
> before the day on which the employee would have
> been paid the wages if the employment had not
> been terminated.

Md. Code Ann., Lab. & Empl. § 3-505(a).  If an employer fails to
pay an employee in accordance with this provision within two
weeks of the date on which the employer was required to pay the
wage, the employee can bring an action against the employer to
recover the unpaid wages.  Id. § 3-507.2(a).  In such an action,

"if a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs."  Id. § 3-507.2(b).

In moving for summary judgment as to this claim, Defendant asserts that, by issuing the two checks payable to Plaintiff within a week following the effective date of her termination, it complied with the MWPC.  Def.'s Reply at 14-15.  The Court finds that Defendant is not entitled to judgment as to this claim under the current record.  Plaintiff states that, while these checks may have been timely issued, she was never told that they were at the store for her to pick up.  Furthermore, she alleges she was forbidden to enter the store, even had she been told the checks were waiting.  Defendant, in fact, makes no claim that Plaintiff was informed that the checks were available and concedes it was considerably outside the requisite two weeks before they actually reached Plaintiff.

"The primary purpose of the MWPC is 'to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'"  Butler v. VisionAIR, Inc., 385 F. Supp. 2d 549 (D. Md. 2005) (quoting Battaglia v. Clinical Perfusionists, 658 A.2d 680, 686 (Md. 1995)) (emphasis added).  Simply issuing checks but not telling the employee that they were issued or

23

where they could be picked up, does nothing to assure that the employee actually collects the wages due.  Defendant's motion will be denied as to this claim.

## IV. CONCLUSION

The claims set forth in the Amended Complaint are largely without merit.  There do remain, however, questions as to whether Plaintiff has yet to receive the $745.84 that she is owed for her prorated bonus and as to whether Defendant has fully complied with the provisions of the Maryland Wage Payment and Collection Law.  Accordingly, the Court will grant Defendant's motion as to all but Count V of the Amended Complaint.

It would be anticipated that the parties will be able to resolve the narrow issues that are outstanding in this action without the need for further litigation or involvement of the Court.  To determine whether that is possible, the Court asks that the parties submit a joint status report within ten days of this date indicating whether the Court needs to issue a scheduling order in this action.

A separate order consistent with this memorandum will be issued.

_____/s/_____

William M. Nickerson

                                        Senior United States District Judge


DATED: January 3, 2012.